STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
MARK AVEIS (SBN 107881)
STEVEN M. ARKOW (SBN 143755)
BYRON J. MCLAIN (SBN 257191)
Assistant United States Attorneys
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4477/6975/0637
     Facsimile: (213) 894-6269
     E-mail:    mark.aveis@usdoj.gov
                steven.arkow@usdoj.gov
                byron.mclain@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 11-963(A)-PSG |
|---|---|
| Plaintiff, | GOVERNMENT'S NOTICE OF MOTIONS AND MOTIONS *IN LIMINE* NOS. 3-8; MEMORANDUM OF POINTS AND AUTHORITIES |
| v. | |
| JASON RAY PATTERSON, and RONALD GEORGE TOMICH, aka "Ronko Tomich," | Hearing/Status Conference date: February 2, 2015[1] |
| Defendants. | Hearing Time:    9:00 a.m. |

     Please take notice that on February 2, 2015 at 9:00 a.m., at the
status conference in this case, the government will move *in limine*
for the following orders:

---

     [1]  The government is aware of the Court's standing order that
motions *in limine* should be set hearing on the first day of trial.
However, given that the Court heard argument on prior motions *in
limine* in advance of trial, one of which is related to these motions,
see footnote 2, below, the government has filed the present motions
to be heard at the status conference in order for the Court and the
parties to have more opportunity to prepare and resolve these issues
before jury selection.

1  Motion *in Limine* No. 3:[2] to preclude the introduction of
2  evidence, or reference during trial, including during voir dire,
3  regarding the dismissal of the case against former co-defendant
4  Patricia Snuggs, on the ground that such evidence or reference is
5  irrelevant and/or more prejudicial than probative under FRE 403;

6  Motion *in Limine* No. 4: to preclude the introduction of
7  evidence, or reference during trial, including during voir dire, that
8  defendants' alleged misrepresentations or omissions were not material
9  because the lenders or financial institutions that vetted the loans
10  at issue did not rely on them, on the ground that such evidence or
11  reference is irrelevant;

12  Motion *in Limine* No. 5: to preclude the introduction of
13  evidence, or reference during trial, including during voir dire, that
14  lenders or financial institutions, including the lenders or financial
15  institutions that vetted the loans issue, invited or could have
16  prevented defendants' offense conduct, on the ground that such
17  evidence or reference is irrelevant;

18  Motion *in Limine* No. 6: to preclude the introduction of
19  evidence, or reference during trial, including during voir dire, of
20  any malfeasance by lenders or financial institutions, on the ground
21  that such evidence or reference is irrelevant;

22  Motion *in Limine* No. 7: to preclude defendants from seeking jury
23  nullification; and

24

---

25  [2] The government's previously filed motions *in limine,* for
26  orders to preclude improper evidence regarding victim/lender
   negligence (Dkt. No. 378) and to limit improper testimony of
   defendant Patterson's purported expert witness (Dkt No. 388), were
27  initially not sequentially numbered but are hereby considered numbers
   one and two, respectively, for the purposes of the present motions
28  and for ease of reference.

1     Motion *in Limine* No. 8: to preclude reference to co-defendant

2    Allen Dana's custody status, on the ground that such evidence or

3    reference is irrelevant and/or more prejudicial than probative under

4    FRE 403.

5     The motions shall be based upon this notice of motion, the

6    attached memorandum of points and authorities, the Court file, and

7    such other evidence as the Court may consider.

DATED: January 6, 2015    STEPHANIE YONEKURA
                       Acting United States Attorney

                       ROBERT E. DUGDALE
                       Assistant United States Attorney
                       Chief, Criminal Division

                       _____/s/_____
                       MARK AVEIS
                       STEVEN M. ARKOW
                       BYRON J. MCLAIN
                       Assistant United States Attorneys
                       Attorneys for Plaintiff
                       United States of America

# **TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                                          <u>PAGE</u>

TABLE OF AUTHORITIES...................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...................................1

I.   FACTS............................................................1

II.  ARGUMENT.........................................................2

III. CONCLUSION......................................................10

i

1

**TABLE OF AUTHORITIES**

2      DESCRIPTION                                                                                      PAGE

3      **CASES**

4      Neder v. United States,
           527 U.S. 1 (1999)........................................................5
5
       United States v. Chen,
6          324 F.3d 1103 (9th Cir. 2003)............................................6

7      United States v. Cowan,
           524 F.2d 504 (5th Cir. 1975).............................................2
8
       United States v. Gregg,
9          179 F.3d 1312 (4th Cir. 1999)............................................7

10     United States v. Halbert,
           640 F.2d 1000 (9th Cir. 1981)............................................6
11
       United States v. Lutz,
12         154 F.3d 581 (6th Cir.1998)..............................................7

13     United States v. Peterson,
           538 F.3d 1064 (9th Cir. 2008)............................................5
14
       United States v. Pizano,
15         421 F.3d 707 (8th Cir. 2005).............................................7

16     United States v. Powell,
           955 F.2d 1206 (9th Cir. 1991)............................................9
17
       United States v. Rasheed,
18         663 F.2d 843 (9th Cir. 1981).............................................6

19     United States v. Rashid,
           383 F.3d 769 (8th Cir. 2004).............................................6
20
       United States v. Real Property 874 Gartel Drive, Walnut, CA,
21         79 F.3d 918 (9th Cir. 1996)..............................................7

22     United States v. Reynolds,
           189 F.3d 521 (7th Cir. 1999).............................................7
23
       United States v. Ripinsky,
24         109 F.3d 1436 (9th Cir. 1997)............................................8

25     United States v. Service Deli Inc.,
           151 F.3d 938 (9th Cir. 1998).............................................6
26
       United States v. Simpson,
27         460 F.2d 515 (9th Cir. 1972).............................................9

28

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                    <u>PAGE</u>

**<u>CASES</u>**

<u>United States v. Swaim</u>,
        757 F.2d 1530 (5th Cir. 1985).................................7

<u>United States v. Wallace</u>,
        848 F.2d 1464 (9th Cir. 1988).................................3

<u>Woodruff v. United States</u>,
        425 U.S. 971 (1976)..........................................3

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  I.  FACTS

3      Jury trial is currently set for February 10, 2015.  Remaining

4  defendants Jason Patterson ("Patterson") and Ronald Tomich

5  ("Tomich"),[3] both real estate agents, stand charged with multiple

6  counts of wire fraud, bank fraud, and making false statements to

7  financial institutions.  Essentially, the indictment alleges that

8  defendants schemed to defraud lenders through a kickback scheme where

9  straw buyers enlisted by convicted co-defendant Allen Dana ("Dana")

10 agreed to buy properties, listed by defendants Patterson or Tomich,

11 for more than the list or asking prices.  The difference in price was

12 the kickback that was paid to Dana.

13     Defendants Patterson and Tomich earned real estate commissions

14 on the deals.  The higher prices were justified in part on appraisals

15 by Patricia Snuggs.  None of the straw buyers ever intended to reside

16 in the properties and none worked with either Patterson or Tomich to

17 negotiate the purchases even though Patterson or Tomich represented

18 the straw buyers.  The arc of the scheme began with false statements

19 in property purchase agreements regarding the payment of third-party

20 commissions or referral fees; the scheme then morphed to using bogus

21 invoices or promissory notes, sometimes for non-existent property

22 improvements; and the scheme culminated in the use of concurrent or

23 "double escrows" where Dana simultaneously bought a property for no

24 consideration and then flipped it to a straw buyer whose purchase was

26 _____

27 [3] Defendant Quyen Kiet recently pleaded guilty on December 16, 2014.  See Dkt. No. 461.  Defendant Dana and defendants Isaac Soussana and Israel Soussana, mortgage brokers charged in this scheme, previously pleaded guilty.

1

facilitated by a fraudulently obtained bank loan.[4]

The government has provided the foregoing general description of the allegations for the purposes of the present motions because the motions do not turn on specific facts or allegations.  Rather, the motions turn on legal principles.  Those facts necessary to evaluate the government's motions that were not mentioned above are specifically described below.

II.  ARGUMENT

_Motion in Limine No. 3_: to preclude the introduction of evidence, or reference during trial, including during voir dire, regarding the dismissal of the case against former co-defendant Patricia Snuggs, on the ground that such evidence or reference is irrelevant and/or more prejudicial than probative under FRE 403.

The grand jury initially charged real estate appraiser Patricia Snuggs ("Snuggs") with multiple counts of fraud for preparing fraudulent appraisals that were submitted to persuade lenders to approve loans for the straw borrowers.  Pursuant to Fed.R.Crim.P. 48(a), the government requested dismissal of the case as to appraiser/co-defendant Snuggs without prejudice; the Court granted that request.  Dkt. Nos. 381, 404, 405.  The government was not required to state any ground(s) for requesting dismissal because the government has the sole discretion to decide whether to continue to prosecute.  See, e.g., United States v. Cowan, 524 F.2d 504, 513 (5th Cir. 1975) ("The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated."), cert. denied sub nom., Woodruff v. United States, 425 U.S. 971

---

[4]   Some of the details of the double-escrows are contained in the stipulated factual basis in the cooperation plea agreement for escrow officer/co-defendant Kiet.  Dkt. No. 459 at pp. 21-23.

1    (1976); *see also* <u>United States v. Wallace</u>, 848 F.2d 1464, 1468 (9th

2    Cir. 1988) (government's *ex parte* request for dismissal should be

3    granted absent defendant carrying burden of establishing that request

4    made in bad faith).

5        The government anticipates that defendants will mention or argue

6    at trial that defendants were entitled to rely on the validity of

7    Snuggs' appraisals; that doing so established that defendants did not

8    criminally act; and that, moreover, the government's decision to

9    dismiss the case against Snuggs implied that the government concurs

10   with defendants that defendants acted without criminal intent.

11       Defendants' anticipated position is without merit.  The

12   government's reasons for requesting dismissal of the charges against

13   a co-defendant are not required to be stated in the government's

14   request for dismissal, nor are those reasons relevant to any issue

15   that remains, i.e., the criminal culpability of the trial defendants.

16   By analogy, the government would similarly be barred from introducing

17   *against these defendants* the convictions of co-defendants, as such

18   would violate defendants' Confrontation Clause rights.  <u>See</u> Advisory

19   Committee Notes to Fed.R.Evid. 803(22).  Furthermore, devolving into

20   those reasons would equally be confusing, distracting, and/or a waste

21   of trial time, thus rendering such reference or evidence more

22   prejudicial than probative, because the Court would likely have to

23   entertain evidence of whether Snuggs had criminal intent to prepare

24   her appraisals.  As it stands, defendants may offer appropriate

25   evidence that they relied on Snuggs' appraisals; the government will

26   wait and see whether such evidence may be subject to objection(s).

27   ///

28   ///

Motion *in Limine* No. 4: to preclude the introduction of evidence, or reference during trial, including during voir dire, that defendants' alleged misrepresentations or omissions were immaterial because the lenders or financial institutions that vetted the loans at issue did not rely on them, on the ground that such evidence or reference is irrelevant.

The government intends to prove that the loan applications submitted to lenders on behalf of the straw buyers who were represented by defendants Patterson or Tomich were rife with false statements about employment, income, assets, and owner-occupancy intent, among others. The government intends to prove that these false statements were, with regard to the wire and bank fraud charges, material to the lenders' loan approval/underwriting decisions or, with regard to the charges of making false statements to financial institutions, made for the purpose of influencing the lenders to approve the loans.

During the December 1, 2014 hearing on the government's motion *in limine* to preclude reference to lender negligence, counsel for defendant Patterson, joined by counsel for defendant Tomich, raised the issue that the lenders did not rely on any statements (false or otherwise) in the loan applications because the lenders intended to package and sell the loans on secondary or other sophisticated commercial paper markets. So their argument goes, the lenders either knew the loans were fraudulent, willfully ignored the possibility that the loans were fraudulent, or carelessly vetted the loans; whatever *the lenders'* purported intention or *mens rea* may have been, they did not rely on, or consider material, any of the statements in

1    the loan applications, much less false ones. [5]

2        Defendants' attempt to shift this case from one about their own

3    criminal conduct to one that in effect excused their criminal conduct

4    should be rejected based on the well-established principle that

5    materiality is an *objective* standard and that reliance is not

6    relevant.  Therefore, all that matters is that defendants took steps

7    that were calculated to result in loan approval.  What the lenders

8    may have thought or intended, what they actually did, or on what they

9    actually relied, is irrelevant.

10       It is "the materiality of the falsehood [that] is an element of

11   the federal mail fraud, wire fraud, and bank fraud statutes." Neder

12   v. United States, 527 U.S. 1, 25 (1999).  Whether a statement is

13   material is an *objective* standard, requiring only that the government

14   prove that a statement "could have influenced the [lender's]

15   decisions or activities . . . ." United States v. Peterson, 538 F.3d

16   1064, 1070-72 (9th Cir. 2008); Neder, at 16 (a statement is material

17   if it "has a natural tendency to influence, or is capable of

18   influencing, the decision of the decision making body to which it was

19   addressed.").  The Supreme Court further held in Neder that "t]he

20   common-law requirements of 'justifiable reliance' and 'damages,' for

21   example, plainly have no place in the federal fraud statutes[,]

22   (citation omitted), [and] 'the government does not have to prove

23   ───────────────

24        [5]  The government's prior motion *in limine* to preclude evidence
     of lender negligence (currently under submission) was designed to
25   address a different issue: the relevancy (or lack thereof, as the
     government argued) of whether a lender carelessly vetted a loan
26   application.  Here, as alluded to by defense counsel during that
     earlier hearing, the government has addressed a different, albeit
27   somewhat related, motion to exclude: whether a lender *intentionally*
     or by design ignored or used specific underwriting criteria in order
28   to facilitate the sale of originated loans on later markets.

actual reliance upon the defendant's misrepresentations' (citation omitted)."  527 U.S. at 26.  <u>See also</u> 18 U.S.C. § 1343 and Ninth Cir. Model Jury Instr. Nos. 8.121 and 8.124 (2010), commentary (absence of reference to reliance as an element of wire fraud).  <u>United States v. Rashid</u>, 383 F.3d 769, 779 (8th Cir. 2004) (the court rejected the defendant's position that the misrepresentation at issue was not material because a $15 million cashier's check would never have been believed by the bank to which it was presented).

The Ninth Circuit is in full accord.  For example, in <u>United States v. Chen</u>, 324 F.3d 1103, 1104-05 (9th Cir. 2003), the court held that materiality "is tested by whether the false statements could have affected or influenced" the lender.  The court expressly rejected the argument that the government was required to introduce evidence that the actionable misconduct (e.g., a false statement or omission in a loan application) actually affected the lender's decision.  Thus, the government was *not* required to show that the lender "would more likely than not have produced an erroneous decision").  Put another way, as the Ninth Circuit held in <u>United States v. Service Deli Inc.</u>, 151 F.3d 938, 941 (9th Cir. 1998), "[t]he test is the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end."  <u>See also</u>, <u>United States v. Rasheed</u>, 663 F.2d 843, 850 (9th Cir. 1981) ("The mail fraud statute does not require proof that anyone has been defrauded."); <u>United States v. Halbert</u>, 640 F.2d 1000, 1009 (9th Cir. 1981) ("A misrepresentation may be material without inducing any actual reliance.  What is important is the intent of the person making the statement that it be in furtherance of some fraudulent purpose.") (citations omitted); <u>United States v.</u>

Gregg, 179 F.3d 1312, 1315 (4th Cir. 1999) (ruling that actual reliance is not necessary in determining materiality of false statements so long as such statements were intended to, or had the capacity to, induce reliance); United States v. Swaim, 757 F.2d 1530, 1535 (5th Cir. 1985) ("A statement may be material even if it is ignored or never read by the agency receiving the misstatement."); United States v. Lutz, 154 F.3d 581, 588 (6th Cir.1998) ("It is not necessary to show that the statement actually influenced an agency, but only that it had the capacity to do so."); United States v. Reynolds, 189 F.3d 521, 525 (7th Cir. 1999) ("Reliance is not an element of proving a [bank fraud] violation . . . .  Evidence that the bank would not have relied on [defendant's] representation, and instead would have made an exception for him, does not establish that the representations were immaterial; that is, the representations would not have a tendency to influence the bank's decision-making."); United States v. Pizano, 421 F.3d 707, 722 (8th Cir. 2005) ("[Defendant]'s argument fails because it misconstrues the materiality element of bank fraud by improperly injecting a reliance requirement into the analysis. Under the bank fraud statute, the Government need not prove that the financial institution actually relied on the defendant's misrepresentations.").[6]

///

---

[6]    Defendant's argument is even less valid in regard to the other charges in this case, namely, false statements to a financial institution under 18 U.S.C. § 1014.  There, the government need only prove that a false statement was made "for the purpose of influencing" a lending decision.  Id.  Thus, under section 1014, it is irrelevant whether a lender actually relied upon a false statement, so long as the statement was made for the purpose of influencing a lending decision.  See, e.g., United States v. Real Property 874 Gartel Drive, Walnut, CA, 79 F.3d 918 (9th Cir. 1996).

Motion *in Limine* No. 5: to preclude the introduction of evidence, or reference during trial, including during voir dire, that lenders or financial institutions, including the lenders or financial institutions that vetted the loans issue, invited or could have prevented defendants' offense conduct, on the ground that such evidence or reference is irrelevant.

In a vein similar to the argument described in motion *in limine* no. 4, above, defendants are also expected to argue that the underwriters who vetted the loans at issue were co-participants or, at the least, invited or could have prevented defendants' misconduct by, for example, ignoring or failing to follow underwriting criteria. This argument may be considered a more-nuanced version of defendants' "blame the victim" defense and, similarly, must fail because the lending institutions and their shareholders are the victims, not the underwriters or any other lenders' agents or employees. United States v. Ripinsky, 109 F.3d 1436, 1440 (9th Cir. 1997) ("[I]t is the financial institution itself – not its officers or agents – that is the victim of the fraud . . . .").

Motion *in Limine* No. 6: to preclude the introduction of evidence, or reference during trial, including during voir dire, of any malfeasance by lenders or financial institutions, on the ground that such evidence or reference is irrelevant.

Defendants should also be precluded from introducing any evidence or making any reference during trial to unrelated lawsuits, news articles, or other information that mentions that mortgage lenders in general, or any of the lenders in this case, somehow committed wrongdoing, such as may have contributed to the so-called mortgage "meltdown" in the past few years. Although the government will ask the Court to voir dire the jury venire to ferret out potential bias here, the government expects that the defense will attempt to persuade an otherwise unbiased juror that defendants were

1  not the cause of the losses in this case; it was the lenders who

2  caused the losses.

3      Plainly, this argument would be irrelevant to establishing or

4  disproving any element of the charges.  Looping into the case the

5  existence of other cases, allegations therein, consent or settlement

6  decrees that arose from complex civil proceedings, or similarly

7  unrelated matters would be irrelevant and not consistent with any of

8  the authority cited above that narrowly circumscribes the scope of

9  relevant evidence in these types of cases.  Sweeping and hyperbolic

10  diatribes that seek to put the mortgage lending industry in general

11  on trial are prejudicial and, more importantly, not relevant to the

12  specific real estate transactions charged in this case.  The practice

13  of other lenders, even if proven, cannot form the basis for the jury

14  to determine materiality of the alleged false statements made to

15  lenders in this case.

16      Motion *in Limine* No. 7: to preclude seeking jury nullification.

17      Somewhat similar to the expected and impermissible positions

18  described above, defendants are expected to argue that the jury

19  should acquit them because defendants are "scapegoats" for others

20  involved in or who may have perpetrated the "sub-prime crisis" or

21  "mortgage meltdown."  Defendants should be barred from making any

22  argument for, or otherwise attempting to seek, jury nullification

23  based on these broad-sweeping theories or speculation as it is clear

24  that they have no right to do so.  See, e.g., United States v.

25  Powell, 955 F.2d 1206, 1212-13 (9th Cir. 1991) (holding that the

26  defendant has no right to instruct the jury to nullify itself);

27  United States v. Simpson, 460 F.2d 515, 519 (9th Cir. 1972).

28  ///

1        Motion *in Limine* No. 8: to preclude reference to co-defendant
Allen Dana's in-custody status, on the ground that such evidence or
2    reference is irrelevant and/or more prejudicial than probative under
FRE 403.

3

4        Convicted co-defendant Allen Dana is currently in custody and

5    awaiting sentencing.  In the event that he is in custody during

6    trial, it would be irrelevant and/or more prejudicial than probative

7    to permit defendants to make reference to Dana's custodial status.

8    It is not the jury's province to consider punishment in determining

9    guilt or innocence; the jury will be so instructed.  See Ninth

10   Circuit Model Jury Instruction No. 7.4 (Jury Consideration of

11   Punishment).[7]  Similarly, and equally problematic, would be

12   defendants' suggestion to the jury, implicit or explicit, that, if

13   convicted, custody time awaits them as well given Dana's custodial

14   status.

15   III. CONCLUSION

16       For the foregoing reasons, the government respectfully requests

17   that the Court grant the government's motions *in limine*.

18

19

20

21

22

23

24

25   _____

    [7] The jury instruction provides: "The punishment provided by law
26   for this crime is for the court to decide.  You may not consider
punishment in deciding whether the government has proved its case
27   against the defendant beyond a reasonable doubt."

28